OaRütheRS, J.,
delivered the opinion of the Court.
This case is important in its principles as well as the amount involved. It is a claim against the defendants, as the heirs and representatives of Jojhn McGee, now deceased, for a large amount, on account of a failure on his part to perform certain trusts for the benefit of complainant.
The facts of the case, so far as they are necessary for the questions raised, are briefly these:
The complainant is a daughter of Barely MeGee, who made his will in July, 1819, and soon after died, leaving a large estate. He left a large portion of his estate to his son John, and made him one of his executors. William Lowry, the husband of his daughter Polly, was not in favor with him, and did not enjoy his confidence. He gave to this daughter five slaves, and a house and lot he had previously placed in her possession, and no more of his estate, except the contingent provision in the following clause: “ The debt due me from Wm. Lowry and my son Alexander, and for which I have their note, I hereby assign and transfer to my son John McGee, to be held by him in trust, to permit the said Wm. Lowry and Alexander McGhee to use and employ said sum of money in whatever manner may be profitable to them, the *271 said William and Alexander. But in case any accident or calamity is likely to befall them, then it is my will and desire that my son John, as trustee for that purpose, should receive said sum of money, and apply it in such manner as in his judgment should le most useful and beneficial to Polly Lowry, wife of said William, and her childern, and to said Alexander and his childern.”
Upon this trust the first and principal question arises. The debt and note referred to was $10,000, the one-half of which, with the interest from 1819, under the events which have happened, is claimed by the complainant for a breach of trust on the part of the trustee, by which it has been lost.
The Chancellor granted the prayer of the bill, and gave her a decree for $16,900, consisting of the $5,000 and the interest from the date of the will, or death of the testator, in the year 1819.
William Lowry continued solvent and apparently prosperous until 1842 or ’43, when he became embarrassed and failed. He had a considerable property, upon which he made deeds of trust to secure a part of his creditors; but others remained unsatisfied. He had much more means than would have been sufficient to satisfy the debt in the hands of John McGee, the trustee under the will, if it had been so applied. McGee became apprised of the approaching storm, and succeeded in procuring from Lowry a conveyance of valuable lands, the legal title to which was in him, but the right in McGee. But no efforts whatever were made, not even an application or request to secure the debt of $5,000, for the benefit of complainant and her children, as directed by the will in the event which had then happened. It is reasonable to suppose that it would have been an easy matter to have induced Lowry to have made this debt secure for the benefit of his wife and children, out of the ample means then in his hands, in preference to all other creditors, if he had been requested to do so. By qualifying as executor, McGee assumed the trust imposed upon him by the will in this regard. He thereby became bound to act faithfully and vigilantly for the interest of the *272 beneficiaries. It was incumbent upon bim to adopt every means in liis power to secure the debt. The “accident or calamity” provided for in the will had befallen the debtor, and the time to act in the collection of the debt had arrived. It does not appear how long the failing condition of the debtor had been known to the trustee, but it does appear that he was aware of the impending disaster, and profited by his knowledge so far as to secure himself. No good reason is given, or can be seen in the record, why he did not, at the same time, make safe or collect the trust fund. Nor can it be reasonably doubted but that he could have done so, if he had tried. It must then be very clear, upon the plainest principles regulating the duties and responsibilities of trustees, that he has rendered himself accountable for the fund. It is not a good answer to this, that the debt was barred by the statute of limitations or lapse of time, as is contended by counsel. If that defence could have been made available by Lowry, which is not conceded under the circumstances, so as to have defeated any action that might have been brought against him for the debt, it cannot still be available in this controversy for two reasons: first, because no step had been taken by the trustee, in the way of renewals or otherwise, to guard against that defence; and secondly, and mainly, because the debtor might not have seen fit to rely upon the statute even if, by law, he could have done so. We are not to presume that Lowry would have interposed this or any other defence, if, indeed, he could have done so, to a just claim in favor of his own wife and children, who were threatened with want and poverty without it. At all events, and in every view of the subject, it was the imperative duty of the trustee to make every exertion in his power to secure the debt. But, from what we can see, he did nothing — made no effort to secure it; not even a request to the debtor to pay it by transfer of, or deed of trust upon his ample property. Surely then, upon every principle, he must be held accountable for the fund in a Court of Equity.
But an important question next arises, as to the time from *273 ■which the interest should he counted. Upon this we have no ■difficulty. By the will it was a term in the trust that the debtor should have the use and benefit of the money due, to employ, at discretion, for his own benefit, until the contingent event specified should occur for its collection. Until that time the payment could not have been coerced; it was not •due and collectable by the assignee in trust. It never could have been, successfully, demanded if Lowry had not failed. The reason operating upon the mind of the testator would never have existed if Lowry had continued solvent. The necessity for calling in the money could only arise by that change in Lowry’s circumstances, which seems to have been anticipated as likely to occur, by which his wife and children would be deprived of the means of a comfortable support. When, if ever, that state of things should come up, or appear likely to arise, the duty to act was enjoined by the will upon the trustee, and not before. There is no intention, nor could it be so from the nature of the transaction, that the fund should accumulate by the accrual of interest. The interest should only be counted against the trustee from the time Lowry failed and the trustee was in default — say from the first of January, 1853. The decree, in that respect, must be modified.
2. There is another branch of this case not yet noticed. The complainant claims the valuable tract of land on which she- and her family reside, and have used and occupied perhaps from the year 1820 up to this time. She insists that her brother, John McGee, undertook and promised their father that he would, out of his large and ample means, procure a home for complainant and her children; and, in pursuance of that undertaking, he purchased at the land sales in 1820 the said tract of land, for her use and benefit, but kept the legal title in himself, for greater security against events that might occur, but always acknowledged the trust in her favor: and she further charges, that the money used for this purpose was placed in his hands by their father before his death, and that the land was bought and paid for out of that fund. This last position of the bill is not made out by the proof, but the pre *274 ponderance of evidence is that said John paid for the land out of his own means. But it is clearly made out, by the most respectable and reliable witnesses, that the said John admitted and acted upon the injunctions of his father in procuring this land for the benefit of his sister and her children, in fee, but retained the title in himself for greater security against the creditors or improvidence of Lowry. And there is reason to believe that it was his intention, until his death, to so fix the title, but, by neglect, failed to attend to it. We concur with the strong expressions of the Chancellor, in his decree, that there is a high moral obligation resting upon the defendants, who inherited the very large estate of their father, to carry out his wishes and instructions in this respect, by doing what he so often declared he intended for the benefit of his sister and her children. ' But we are reluctantly constrained to decide that they cannot be compelled by law to do so-. There was no written declaration of the trust, nor was there any consideration passing from or for them to the said John upon which a trust can be raised and enforced by a Court of Equity. It was a voluntary, unexecuted trust, binding only upon xhe conscience of John McGee and his heirs; but they have a legal right to stand upon the strict law, and successfully resist the claim.
It appears in the proof that the said John, both in his professions and acts, was kind and liberal to his sister and her family at all times. He rendered them great assistance and many favors in their misfortunes. And there is just as little doubt that it was his purpose, long entertained and constantly announced, to secure to them the tract of land in question, and that he bought it in 1820 for that and no other purpose. As a conclusive evidence of that, he bought it through the agency and in the name of Lowry, and permitted the title to a portion, if not all of it, to remain in him as long as it was safe to the family, or until his failure. We are however compelled, by fixed legal principles, to refuse the prayer of the bill as to the land, and allow the defendants, if they choose to do so, to defeat the cherished purposes of both the father *275 and grandfather in regard to the home of the complainant and her children.
The conclusion is, that we affirm the decree of the Chancellor in all things except as to the interest on the $5000, from 1819 to 1843. The whole costs of the case, here and below, will be paid by the defendants, Wm, Lowry and the McGees, equally.